STATE of Utah, Plaintiff and Appellee,

v.

John SCHWEITZER, Defendant
and Appellant.

No. 960474–CA.

Court of Appeals of Utah.

July 31, 1997.

Kenneth R. Brown, Salt Lake City, for Appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for Appellee.

Before WILKINS, GREENWOOD, and ORME, JJ.

WILKINS, Associate Presiding Judge:

Defendant John Schweitzer pleaded guilty to the crimes of aggravated assault and stalking. Defendant now challenges as unnecessarily harsh, unfair, and unconstitutional the trial court's order sentencing him to serve two consecutive sentences, and requiring him to pay restitution by placing a lien on and ordering the sale of all his personal and

real property, and by including payment of his purported monthly child support obligation in the restitution order. We affirm defendant's sentence with modifications.

## BACKGROUND

The facts supporting defendant's convictions and sentence for aggravated assault and stalking are as follows. Defendant was involved in a three-year relationship with Kathy, during which time she had a child. Kathy described defendant's behavior throughout their relationship as "extremely controlling, violent, and verbally abusive," due to his drug and alcohol abuse. In March 1994, the relationship ended when defendant became violent and threw Kathy into a wall, choked her, called her vulgar names, and threatened to "put a bullet through [her] head." Shortly thereafter, Kathy and defendant became involved in a civil action concerning child custody, support, and visitation.

On December 13, 1995, defendant called Kathy with a vulgar message and, shortly thereafter, arrived at her home and threw a large rock through her sliding glass window. The next day Kathy filed a petition for a protective order giving her custody of their son and preventing defendant from coming near or threatening anyone in the family.

On January 10, 1996, defendant violated the protective order by appearing in court to watch Kathy in another proceeding. After being reprimanded by the judge, defendant went to the home of a friend, Jim. Defendant was very upset and made several serious comments, including: "I have nothing to live for," "If I had a week to live, the first thing I would do is go kill Kathy," and "[I'm] so mad that [I] want to get on top of the bell tower and start shooting people." In this frame of mind, defendant began drinking at around 3:00–4:00 p.m. While at Jim's home, defendant drank ten to twelve beers and took six or eight prescription pills (many times the normal dosage). At about 7:00 p.m., Jim and defendant left for Adolph's, a restaurant in Park City. Jim noted that, when they left his home, defendant was very agitated, was drinking heavily, and was driving "crazy" and "out of control."

At Adolph's, defendant had about three mixed drinks. At some point, defendant told the bar manager, in referring to Kathy, "I am probably going to kill her." The manager became concerned and continued to watch defendant's behavior. During that night, defendant tried to use his cellular phone. When it did not work, he slammed it several times into a table and threw it over his shoulder. Then, apparently in an attempt to leave the restaurant, defendant picked up a bar stool and repeatedly threw it at a locked door and then threw a glass table at the door. Jim tried to defuse the situation by approaching defendant from behind, throwing his arms around defendant, and pulling him across the room toward an open exit. Defendant pulled out a concealed hunting knife, swung his arm down and back, and stabbed Jim near the groin area, causing a wound seven inches deep and four inches long. The knife severed Jim's testicular artery, which caused permanent nerve damage and the loss of a testicle, and just missed Jim's femoral artery, which could have resulted in his death.

The manager called 911 while two restaurant employees attempted to intervene. Defendant hit one in the face and forced the other to back away by brandishing the knife. As defendant tried to leave the bar, he held the knife in front of him, swinging at anyone nearby and daring people to get closer. Before he left, defendant apologized to Jim for stabbing him. Later, Kathy received a phone call describing the stabbing incident and warning her about defendant's threat. Kathy immediately left and did not return home for a week. Five days later, defendant voluntarily surrendered to the police.

Defendant was originally charged with attempted murder. The information was later amended to one count of aggravated assault, a third degree felony; one count of aggravated assault, a second degree felony; one count of assault, a class B misdemeanor; one count of criminal mischief, a class A misdemeanor; one count of stalking, a class B misdemeanor; and one count of carrying a concealed weapon, a class B misdemeanor.

On March 8, 1996, another protective order was issued, in which the trial court awarded

temporary custody of the child to Kathy and required defendant to pay $300 per month in child support. In May 1996, defendant pleaded guilty to charges of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1995), and stalking, a class B misdemeanor, in violation of Utah Code Ann. § 76–5–106.5 (1995). The trial court sentenced defendant to serve an indeterminate sentence of zero-to-five years at the Utah State Prison for the crime of aggravated assault, followed by a consecutive sentence of six months at the Summit County Jail for the crime of stalking. The trial court also ordered defendant to pay restitution to three parties (Jim, Kathy, and Adolph's) by ordering a lien be placed on all defendant's personal and real property in favor of the victims and ordering the property be sold and the proceeds distributed on a pro rata basis to each party. In addition, the court also included in the restitution order a monthly child support payment.

### ISSUES

Defendant does not challenge his convictions of aggravated assault and stalking, but rather challenges on two grounds the sentence imposed for these crimes. First, he argues that the trial court abused its discretion by imposing an unnecessarily harsh and unfair sentence, i.e., by imposing consecutive terms without considering all the legally relevant factors, by placing a lien on and ordering the sale of all defendant's real and personal property to pay restitution, and by including child support obligations in the criminal restitution order. Second, defendant asserts the trial court's sentence was unnecessarily rigorous, violating his right under article I, section 9 of the Utah Constitution.

### ANALYSIS

I. Trial court's discretion in ordering consecutive sentences, ordering the sale of all defendant's property to make restitution, and including child support in the restitution order.

■ The imposition of a sentence "'rests entirely within the discretion of the [trial] court, within the limits prescribed by law.'" *State v. Peterson,* 681 P.2d 1210, 1219 (Utah 1984) (citation omitted). As such, "[w]e review the sentencing decisions of a trial court for abuse of discretion." *State v. Houk,* 906 P.2d 907, 909 (Utah.Ct.App.1995). "Abuse of discretion 'may be manifest if the actions of the judge in sentencing were "inherently unfair" or if the judge imposed a "clearly excessive sentence." '" *Id.* (citations omitted). In addition, a trial court may abuse its discretion in imposing a sentence without considering all the legally relevant factors, *see State v. Montoya,* 929 P.2d 356, 358 (Utah.Ct.App.1996), or in imposing a sentence which exceeds the limits prescribed by law, *see State v. Gibbons,* 779 P.2d 1133, 1135 (Utah 1989); *State v. Snyder,* 747 P.2d 417, 422 (Utah 1987). However, this court may find an abuse of discretion only if we conclude that "no reasonable [person] would take the view adopted by the trial court." *State v. Gerrard,* 584 P.2d 885, 887 (Utah 1978).

A. Consecutive rather than concurrent sentences.

Defendant first argues that the trial court abused its discretion in ordering defendant serve consecutive rather than concurrent sentences because, in making that determination, the court failed to consider all the legally relevant factors. The trial court's authority to impose concurrent or consecutive sentences is governed by Utah Code Ann. § 76–3–401 (Supp.1996). Section 76–3–401(3) requires the court, in determining whether to impose consecutive sentences, to "consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant."

■ Defendant essentially argues that in imposing consecutive prison terms for his crimes of aggravated assault and stalking, the trial court failed to consider the gravity and circumstances of the offense and failed to consider defendant's history, character, and rehabilitative needs. Defendant argues the trial court failed to consider that although he admittedly stabbed Jim, he has never been known to be violent, has never been convicted of a violent crime, was under

the influence of drugs and alcohol at the time of the stabbing, and was remorseful for stabbing his friend. Indeed, he argues, his past arrests involve only the abuse of drugs and alcohol, and as such, he is not, as the trial court found, "a clear and present danger," but merely a person who could benefit from a rehabilitation program.

Although defendant asserts that these factors favor a sentence ordering rehabilitation rather than incarceration, defendant does not show that the trial court failed to consider these factors. On the contrary, this mitigating evidence was presented to the trial court through defendant's testimony; his counsel's arguments; letters from Jim, Kathy, defendant's therapist, and defendant's attorney; and the Pre-sentence Investigation Report. After reviewing the record, we conclude that the information before the trial court clearly outlined and described defendant's past substance abuse and attempted rehabilitation, past personal and criminal history, and his need for rehabilitation.

Furthermore, while there is some mitigating evidence in favor of defendant's need for rehabilitation, the record is also replete with evidence supporting the trial court's finding that defendant is "a clear and present danger" and supporting its order in favor of incarceration rather than rehabilitation. For instance, the evidence shows that defendant's substance abuse causes his complete lack of control and judgment. His criminal history is clearly related to substance abuse, and despite having had substance abuse counseling, defendant has continued to abuse alcohol and drugs. In addition, since 1992, defendant has repeatedly been diagnosed as a substance abuser, yet, he has failed to make an effort in his own rehabilitation. Moreover, both Kathy and Jim testified that they believed that the stabbing incident at the restaurant probably saved Kathy's life. Kathy testified she would not feel safe until he was sent to prison, and defendant's counselor stated only that "he *might* benefit from a substance abuse treatment program like Rational Recovery, but would not likely benefit from the traditional AA model of treatment."

After hearing all the evidence, the trial court concluded that defendant's actions "cried out for incarceration." In making its decision, the court specifically noted that on the night of the stabbing, defendant went to a public place carrying a concealed weapon, he voluntarily over-medicated himself, voluntarily got drunk, indiscriminately used the weapon "with abandonment," and put the restaurant diners, employees, and his friend at risk. In addition, with respect to the stalking charge, the court noted that defendant had made several death threats to Kathy, defendant appeared at her home late at night, and defendant destroyed her property, all of which clearly violated a duly issued protective order. All of these facts support both the trial court's finding that defendant is "out of control" and a "clear and present danger," and its ultimate conclusion to sentence defendant to serve consecutive prison and jail terms.

Although defendant cites *State v. Strunk*, 846 P.2d 1297 (Utah 1993), and *State v. Smith*, 909 P.2d 236 (Utah 1995), as supporting his argument for concurrent rather than consecutive sentences, those cases are clearly inapposite to the circumstances of this case. Both those cases involved consecutive sentences for serious offenses in which the defendants were sentenced to serve a minimum of twenty-four and sixty years, respectively, before being eligible for parole, due to minimum-mandatory sentence requirements. Both the *Strunk* and *Smith* courts reversed those sentences, reasoning that the imposition of consecutive rather than concurrent sentences infringed upon the Board of Pardon's duties to monitor a defendant's progress and abrogated the board's flexibility to parole a defendant earlier. *See Strunk*, 846 P.2d at 1301–02; *Smith*, 909 P.2d at 244–45. In this case, however, it is difficult to argue that defendant's consecutive sentences, of two-to-five years in prison and six months in jail, have a similar effect.

Thus, we hold the trial court appropriately considered all the evidence in sentencing defendant. Under the facts here, the trial court did not abuse its discretion in sentencing defendant to serve two consecutive terms rather than ordering concurrent terms or rehabilitation. In addition, because the length and consecutive nature of the terms

are within the statutory parameters,[1] we cannot say that defendant's consecutive prison and jail terms are either unfair or unnecessarily harsh.

B. Restitution order placing a lien on and requiring sale of all defendant's personal and real property.

■ Defendant also challenges the trial court's restitution order as unnecessarily harsh and unfair in that it requires all defendant's real and personal property be liened, sold, and distributed pro rata to the victims. The trial court is given discretion in sentencing under Utah Code Ann. § 76–3–201 (Supp. 1996), and may clearly order a person convicted of a crime that resulted in pecuniary damages to pay restitution. *See id.* § 76–3–201(4)(a)(i); *State v. Snyder*, 747 P.2d 417, 420 (Utah 1987) ("It lies within the discretion of the trial court to impose sentence or a combination of sentences which may include the payment of a fine, restitution, probation, or imprisonment."). This authority, however, is limited by the sentencing statute. *See* Utah Code Ann. § 76–3–201(2) (Supp.1996). Therefore, we will not disturb the court's restitution order unless it exceeds that prescribed by law or otherwise abused its discretion. *See State v. Twitchell*, 832 P.2d 866, 868 (Utah.Ct.App.1992); *see also Gerrard*, 584 P.2d at 887–88.

In this case, defendant does not challenge the trial court's imposition of restitution or the amount. Therefore, the only issue is whether the trial court exceeded its authority in ordering "all" defendant's property be liened and sold to satisfy the restitution order.

Under Utah Code Ann. § 76–3–201(4) (Supp.1996), a trial court has authority to order a person convicted of any crime that resulted in pecuniary damages to pay restitution. In ordering restitution, the court must consider certain factors, including defendant's financial resources and defendant's ability to pay. *See* Utah Code Ann. § 76–3–

201(8). In this case, the record reflects that there was some discussion regarding defendant's financial resources, including his monthly income, monthly debts, property, and assets. However, except for two pieces of real property defendant admitted owning, the record is unclear as to what other property, real or personal, defendant owns. Based on this information, the trial court ordered restitution, determined the amount, and without discussion or findings regarding what property defendant in fact owned or possessed, the trial court then ordered a lien on and the sale of "all" defendant's property, both real and personal, to satisfy the restitution order.

■ While the statute clearly gives trial courts discretion to determine restitution, i.e., to determine whether restitution is appropriate and in what amount, *see id.* § 76–3–201(4)(a)(i), (8), the statute contemplates that the restitution order will be enforced according to the Utah Rules of Civil Procedure. *See id.* § 76–3–201(4)(a)(iv). Section 76–2–301(4)(d)(iii) provides that "[a] judgment ordering restitution constitutes a lien when recorded ... and shall have the same effect and is subject to the same rules as a judgment for money in a civil action." *Id.* § 76–3–201(4)(d)(iii). Under subsection (4)(a)(iv), "the person in whose favor the restitution order is entered may seek enforcement of the restitution order in accordance with the Utah Rules of Civil Procedure," which provide for a hearing to both exclude property exempt from execution and itemize the property available for sale. *Id.* § 76–3–201(4)(a)(iv); *see also* Utah R. Civ. P. 69(g), (i), (o). Thus, the statute does not authorize the trial court, upon imposing restitution, to also order the sale of defendant's property to satisfy that restitution order. Rather, it contemplates that the trial court's role is limited to deciding, based on the statutorily imposed factors (primarily the victim's loss and the defendant's resources),

---

1. *See* Utah Code Ann. § 76–3–203(3) (Supp.1996) (stating permissible sentence for third degree felony not to exceed five years, with additional indeterminate term, not more than five years, to run consecutively if court finds use of dangerous weapon in commission of felony); *id.* § 76–3–204(2) (1995) (stating permissible sentence for class B misdemeanor not to exceed six months). *See generally id.* § 76–3–401 (Supp.1996) (placing imposition of consecutive sentences within sentencing court's discretion).

whether restitution is appropriate and in what amount. The statute places the responsibility with the party for whom restitution has been ordered to affirmatively enforce the legal judgment. Therefore, we hold the trial court exceeded the scope of its authority by ordering the sale of all defendant's known and unknown property.

Because defendant does not challenge the court's imposition of restitution or its determination of the amount of restitution, we will affirm the court's restitution order, but strike the portion of the restitution order requiring the lien and sale of all defendant's property. *See State v. Brooks,* 908 P.2d 856, 860 (Utah 1995) ("When a sentence is patently illegal, an appellate court can vacate the illegal sentence without first remanding the case to the trial court ... because an illegal sentence is void and ... [w]hen the pertinent facts are undisputed ... nothing [can] be gained by remanding the case to the trial court.").

C. Inclusion of child support payments in restitution order.

Defendant also challenges the inclusion of child support payments in his criminal restitution order as an abuse of discretion. On February 22, 1996, seven months after the entry of the judgment in the criminal matter, the parties stipulated and the trial court determined in the civil case that defendant is not the father of the child for whom child support was ordered. As a result, defendant was absolved of all financial obligations and any parental rights with respect to that child. Because the issue of paternity and the propriety of the child support obligation is now moot, we need not reach the merits of whether the trial court abused its discretion in

including the alleged prior child support obligation in the restitution order. *See State v. Martinez,* 925 P.2d 176, 178 n. 2 (Utah.Ct. App.1996), *cert. denied,* 934 P.2d 652 (Utah 1997).

II. Utah Constitutional challenge—Violation of "Unnecessary Rigor" clause.

Defendant's final contention is that the trial court violated article I, section 9 of the Utah Constitution. Essentially, defendant contends that he was sentenced "with unnecessary rigor" in that the trial court ordered his sentences to run consecutively, ordered the sale of all his property to pay restitution, and included child support in the restitution order. Although Utah courts have not yet articulated the full scope of the clause, the plain language protects prisoners or arrested persons from treatment that is unnecessarily rigorous. *See* Utah Const. art. I, § 9.[2] The Utah Supreme Court has interpreted this clause to apply to the treatment of imprisoned persons and not to the terms of punishment. *See State v. M.L.C.,* 933 P.2d 380, 385 (Utah 1997); *Bott v. DeLand,* 922 P.2d 732, 737 (Utah 1996) (recognizing "the guarantee against unnecessarily rigorous treatment extends both to prisoners and to arrestees and protects them against unnecessary abuse").

Defendant, however, not only fails to establish how the protections of the unnecessary rigor clause apply to the facts of his case, but he also fails to cite any authority to establish or prove the alleged constitutional violation. We thus decline to further address defendant's constitutional argument.[3] *See State v. Amicone,* 689 P.2d 1341, 1344 (Utah

2. Article I, section 9 of the Utah Constitution provides: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

3. In addition, defendant failed to preserve the constitutional claim below, as he neither raised nor argued the point in the trial court. In such cases, we decline to address even constitutional claims on appeal. *See State v. Anderson,* 789 P.2d 27, 29 (Utah 1990) (holding defendant could not assert, as basis of error on appeal, issue not raised before trial court, even though defendant's claim involved constitutional right); *State v.*

*Webb,* 790 P.2d 65, 77 (Utah.Ct.App.1990) ("As the Utah appellate courts have reiterated many times, we generally will not consider an issue, even a constitutional one, which the appellant raises on appeal for the first time."). This rule applies unless defendant can on appeal establish plain error or the existence of exceptional circumstances to excuse defendant's failure to preserve the issue at the trial court level. *See Monson v. Carver,* 928 P.2d 1017, 1022 (Utah 1996). Defendant's failure to establish that either exception applies is also fatal to his constitutional claim and for this additional reason we decline to address this argument.

1984) (declining to rule on constitutional issue unsupported by legal analysis or authority).

## CONCLUSION

We hold that the trial court did not abuse its discretion in sentencing defendant to serve two consecutive terms and pay restitution. However, the trial court exceeded its authority in ordering the sale of all defendant's property to satisfy the restitution order. In addition, because defendant is no longer obligated to pay child support, the issue is moot. We therefore strike the portions of the restitution order placing the lien on and requiring the sale of defendant's property and the portion including payment of child support. Yet, because we disagree that the remainder of defendant's sentence is either inherently unfair or clearly excessive, we affirm the trial court's decision sentencing defendant to serve two consecutive terms and ordering defendant to pay restitution.

GREENWOOD and ORME, JJ., concur.