Argued and submitted July 31, 2003, order requiring conveyance of 401(k) pension account reversed; remanded for resentencing; otherwise affirmed March 31, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## ARLOA DARLENE PLUMB,
*Appellant.*

0008-36196; A114199

87 P3d 676

Jennelle Meeks Barton, Deputy Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant confessed to embezzling $1 million from her employer and pleaded guilty to 12 counts of aggravated theft. She assigns error to the sentences imposed. We review for errors of law, ORS 138.222(4)(a), and reverse and remand.

On counts 1, 2, 3, and 4, the trial court imposed an upward departure sentence of 60 months' probation with special conditions. On counts 5 and 6, the court imposed sentences of 24 months' imprisonment on each count with count 6 to be consecutive to count 5. On the six remaining counts, counts 7 through 12, the court imposed sentences of 60 months' probation with 90 days of local custody as a condition of probation, with each sentence consecutive. The sentences totaled 66 months of incarceration. However, the trial court left open the possibility of eliminating all local custody:

> "I am going to impose 90 days of local custody to be served consecutive to the prison sentence and consecutive to each other. So there will be a total of a year and a half of additional time, county time, to follow the four year prison sentence. And it's precisely that time that I will have an opportunity to consider upon the defendant's release from prison as to whether or not it should be served.
>
> "So * * * that year and a half, the keys are in your pocket, Ms. Plumb. And when you come back from the 48 months * * * we will then, should your lawyer wish it, have a hearing and decide whether it's appropriate to have you serve that additional year and a half. And I'll tell you right now that the basis of that decision will be the extent to which these restitution issues have been resolved and your level of cooperation in those efforts. * * *
>
> "Then I will be able to look at this situation with the benefit of hindsight. * * * I will know how much has actually been collected from all the various potential contributors, and I'll be able to assess what the appropriate result in terms of your future should be."

In addition, defendant was ordered to pay $1 million in restitution. ORS 137.540(2)(c). As special conditions, defendant was ordered to (1) fully cooperate with collection

efforts, (2) convey all interest in any real property to the victim, and (3) convey her Individual Retirement Account (IRA) and 401(k) pension account to the victim. Defendant also owned personal property stored at five storage facilities; the value of that property was disputed. The court appointed a receiver to sell the contents of the storage facilities. The receiver's and the assistant's fees were to be paid from the proceeds from the sale of the personal property.

Defendant raises four assignments of error. She argues that (1) her 401(k) pension account and her IRA are exempt from collection, (2) restitution is limited to proceeds directly related to her underlying crime, (3) her sentence was improperly conditioned on her surrendering exempt property, and (4) the court erred in appointing a receiver.

■     Like defendant, we consider the first two assignments of error together. First, defendant argues that her 401(k) pension account is exempt from restitution. Defendant argues that, under *Guidry v. Sheet Metal Pension Fund*, 493 US 365, 110 S Ct 680, 107 L Ed 2d 782 (1990), "the anti-alienation clause in 29 USC 1056(d)(1) generally prohibits the federal courts from garnishing or otherwise alienating retirement funds subject to ERISA [Employee Retirement Income Security Act] * * *." Therefore, defendant contends the funds in her 401(k) pension account, which are subject to ERISA, are exempt from the trial court's order that defendant use her retirement funds to pay the restitution judgment. The state concedes the error and we accept that concession.

We next consider the trial court's order regarding defendant's IRA. Defendant argues that "ORS 23.170(2) specifically exempts retirement accounts, including individual retirement accounts * * * from any collections process."[1] The state responds that defendant's argument is not preserved

---

[1] ORS 23.170(2) provides:

"Subject to the limitations set forth in subsection (3) of this section, a retirement plan shall be conclusively presumed to be a valid spendthrift trust under these statutes and the common law of this state, whether or not the retirement plan is self-settled, and a beneficiary's interest in a retirement plan shall be exempt, effective without necessity of claim thereof, from execution and all other process, mesne or final."

and that "the *only* issue defendant raised in the trial court challenging the order to liquidate her retirement accounts was based on *federal law*." (Emphasis in original.)

At trial, the state requested that the court order defendant "to turn over her IRA of [$]200,000." In response to that request, the trial court asked, "Do I have the authority to do that?" The state responded that ORS 137.540(2)(c)[2] allows the court to order the probationer to sell any assets, without any statutory exceptions. In response, defendant's counsel made the following arguments:

> "*Under federal law*, it is my belief, based upon the representations of other attorneys, that the Court does not have the authority to order the transfer of any funds from any kind of IRA or 401[(k)] *under federal law*. They're exempt from attachment, garnishment, any kind of order. Basically, it's up to her. And in a way, you're, I think, trying to get around that to some degree by creative sentencing. In essence, as you said, she may hold the keys to the jail, which I have—it's creative, and *I don't know*—for the record, *I do not know if such a sentence is appropriate or within the range of the Court's discretion. I don't know.*"

(Emphasis added.) The trial court responded, "Well, perhaps we'll find out."

At oral argument before this court, counsel for defendant argued that defendant's statutory argument was preserved because the state raised ORS 137.540(2)(c) at trial and because that statute does not exist "in a vacuum." According to defendant, it should be read along with the restitution and collection statutes, because it "cannot be read independently of statutes that limit collections that the state can undertake." Defendant reasoned that, based on the state's reliance on ORS 137.540(2)(c), at that point, the trial

---

[2] ORS 137.540(2) provides, in part:

"In addition to the general conditions, the court may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the defendant for the protection of the public or reformation of the offender, or both, including, but not limited to, that the probationer shall:

"* * * * *

"(c) * * * sell any assets of the probationer as specifically ordered by the court in order to pay restitution."

court was aware that the issue was its authority to order defendant to convey her IRA.

■ In this case, we agree with the state that defendant's only objection to the order that defendant convey her IRA was based on federal statutory grounds.[3] *See* ORAP 5.45(1); *State v. Chavez*, 335 Or 44, 56 P3d 923 (2002). Defendant did not argue to the trial court that its order was unlawful under Oregon law. Rather, when faced with the question of whether the court's order was within its authority, counsel for defendant said, "I don't know," which does not constitute an objection. Therefore, defendant's argument that the court is precluded from ordering defendant to convey her IRA based on ORS chapter 23 is not preserved, and we do not consider it on appeal.

■ Defendant's only argument that restitution must be limited to proceeds directly related to her convictions is that any condition of probation must either promote public safety, be related to her convictions, or promote her rehabilitation. *See State v. Gammond*, 75 Or App 27, 29, 704 P2d 1154 (1985). Defendant argues that the state failed to prove that the proceeds of either retirement account were stolen from the victim. In this case, there is no such burden on the state. Defendant admitted that she embezzled over $1 million. ORS 137.540(2)(c) provides that the court can order a probationer to pay restitution. There is no statutory requirement that defendant must return the specific embezzled funds. Furthermore, the policy behind restitution is to "impress upon the defendant the seriousness and cost of [the] offense." *State v. Hart*, 299 Or 128, 138, 699 P2d 1113 (1985). Restitution also serves "rehabilitative and deterrent purposes" because it links the defendant's criminal activity to the damage suffered by the victim. *Id.* (internal citations and quotation marks omitted). Simply put, defendant committed a crime and should pay restitution for that crime. Therefore, we hold that the trial court did not err in ordering defendant to convey her IRA.

Defendant's third assignment of error is that "the trial court erred when it imposed a 66-month sentence of

---

[3] Defendant abandoned that argument on appeal.

imprisonment conditioned upon defendant surrendering her protected retirement accounts and satisfying the restitution order." Defendant argues that "[t]he trial court explained that it would decrease the sentence if defendant liquidated her retirement accounts, otherwise protected from collection by state and federal law, to pay down the restitution order. Thus, the trial court used the prison terms as a 'carrot and stick' to effectuate collection of restitution." Defendant further reiterates arguments from her first and second assignments of error and also cites provisions from both the state and federal constitutions, arguing that the trial court exceeded its authority when it imposed defendant's sentence.

To the extent that defendant's argument differs from her first and second assignments of error, those arguments are not adequately preserved. Defendant did not argue that, procedurally, the trial court exceeded its authority when it issued defendant's sentences, nor did she make constitutional arguments to the trial court. As explained previously in our discussion of the substantive issue regarding defendant's retirement accounts, we cannot address arguments that were not adequately raised to the trial court.

We therefore consider defendant's final assignment of error—whether the trial court erred when it appointed a receiver to administer the sale of defendant's personal property. Specifically, defendant argues that (1) "[n]o statutory authority allows a sentencing court to appoint a receiver to sell a defendant's possessions," and (2) the trial court exceeded its authority because "the items in the storage locker were the subject of a Clackamas County court order."[4]

■ Defendant's argument that the trial court did not have the statutory authority to appoint a receiver does not persuade us that the trial court erred. In this case, defendant concedes that the parties could not come to an agreement regarding defendant's assets in the storage lockers, and we hold that it was in the trial court's discretion to appoint a receiver in order to resolve that conflict.[5] To facilitate the

---

[4] Defendant makes additional arguments that are not preserved, and we do not consider those arguments for the first time on appeal. ORAP 5.45; *Chavez*, 335 Or at 48.

[5] In a civil case, we would rely on ORCP 80 B(2) as authority for the appointment of a receiver. ORCP 80 B provides, in part:

trial court's judgment that defendant's assets in the storage lockers be sold, the court exercised its statutory and inherent authority when it appointed a receiver to administer the sale of defendant's personal property. *See* ORS 19.270(1)(b) (providing that trial courts retain jurisdiction for the purposes of enforcing judgments, "subject to any stay of the judgment").

In *Ortwein v. Schwab*, 262 Or 375, 385, 498 P2d 757 (1972), *aff'd*, 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973), the Supreme Court explained the doctrine of inherent authority as follows:

> "We accept the doctrine of inherent power for the judiciary; however, we view it as a more limited source of power * * *. In *State ex rel Bushman v. Vandenberg*, 203 Or 326, 335, 276 P2d 432, 280 P2d 344 (1955), we quoted with approval from Rottschaefer, Constitutional Law, 56 (1939):
>
>> " '* * * The judicial power thus conferred is generally held to include not merely that of deciding cases but also incidental powers necessary to the effective performance of that primary function.'
>
> "We look upon the doctrine of inherent judicial power as the source of power to do *those things necessary to perform the judicial function for which the legislative branch has not provided*, and, in rare instances, to act contrary to the dictates of the legislative branch."

(Emphasis added.)

In this case, we hold that it was appropriate for the trial court to exercise its inherent authority in order to perform its judicial function. The court determined that defendant's assets should be sold and, to carry out that order, the court appointed a receiver to administer the sale of defendant's assets because the parties could not agree on the value of the assets.

---

"* * * [A] receiver may be appointed by a circuit court in the following cases:

"* * * * *

"B(2) After judgment to carry the same into effect."

■ In the absence of specific legislation addressing a situation where the parties cannot agree on the value of defendant's assets, the trial court appropriately exercised its statutory and inherent authority in appointing a receiver. In *State ex rel Coastal Management v. Washington Cty.*, 178 Or App 280, 288, 36 P3d 993 (2001), *rev den*, 334 Or 190 (2002), we characterized *Ortwein* as "holding that the doctrine of inherent judicial authority is the source of power to perform a judicial function for which the legislative branch failed to provide fully[.]" Furthermore, we know of no statutory authority that *prohibits* the trial court from appointing a receiver to ensure that defendant's assets are sold at a fair price in order to satisfy the restitution judgment.

Defendant also argues that the trial court exceeded its authority because "the items in the storage locker were the subject of a Clackamas County court order." However, defendant did not include a copy of that order with her brief, nor does she direct us to a copy of that order in the record. At oral argument, counsel for defendant promised that she would keep us apprised of the status of the civil suit, but has submitted nothing further. Therefore, we conclude that the trial court did not exceed its authority in appointing a receiver to sell defendant's assets located in the storage locker.

In conclusion, we hold that the trial court erred in ordering defendant to convey her 401(k) pension account in order to satisfy the restitution judgment. Otherwise, we affirm the trial court's holding regarding conveyance of defendant's IRA and the appointment of a receiver.

Order requiring conveyance of 401(k) pension account reversed; remanded for resentencing; otherwise affirmed.