**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0409**

State of Minnesota,
Respondent,

vs.

Andrew Will Alexander,
Appellant.

**Filed October 20, 2014**
**Affirmed in part, reversed in part, and remanded**
**Connolly, Judge**

Ramsey County District Court
File No. 62-CR-13-1588

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura S. Rosenthal, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**S Y L L A B U S**

Under the plain language of Minn. Stat. §§ 611A.04, .045 (2012), the district court is not authorized to order a defendant to sell personal property to satisfy a restitution order.

**O P I N I O N**

**CONNOLLY**, Judge

In this sentencing appeal, appellant argues that the district court (1) abused its discretion by ordering appellant to pay restitution; (2) erred by ordering appellant to reimburse the public defender's office without a hearing; and (3) erred by ordering appellant to sell his car to satisfy his restitution obligations. We affirm in part, reverse in part, and remand.

## FACTS

On March 4, 2013, a police officer on patrol in St. Paul observed a BMW fail to stop for pedestrians in a marked pedestrian crosswalk. The officer activated his emergency lights and siren, but the BMW did not slow down and proceeded into an alley. The BMW was forced to stop in the alley because another vehicle was blocking the exit. The officer approached the BMW and identified the driver as appellant Andrew Will Alexander.

The officer ran the license plate number affixed to the vehicle, but the number was not on file. The officer then discovered that the vehicle had been reported stolen from the Motorwerks BMW dealership (the dealership) in February 2013. Appellant was taken into custody. The BMW was subsequently towed to an impound lot, where a Motorwerks BMW employee picked it up and returned it to the dealership.

Respondent, the State of Minnesota (the state), charged appellant with one count of theft of a motor vehicle in violation of Minn. Stat. § 609.52, subd. 2(a)(17) (2012) and one count of fleeing a police officer in a motor vehicle in violation of Minn. Stat.

§ 609.487, subd. 3 (2012). Appellant pleaded guilty to theft of a motor vehicle and the state dismissed the remaining charge. The district court sentenced appellant to three years of probation, 90 days in the Ramsey County Workhouse and imposed a $500 fine, and $21,000 in restitution to the dealership.

Appellant challenged the amount of restitution that the district court ordered. On September 13, 2013, the district court held a restitution hearing. The general manager of the dealership testified about the damage to the vehicle and stated that the total repair cost was $6,616.05. The dealership also had to discount the vehicle by $10,000 because it was stolen and had increased mileage. Appellant also testified at the hearing. He stated that he lied when he said that he purchased the vehicle from Craigslist and that he actually got the vehicle from a woman named "Lisa" that he met through a marketing group. Appellant stated that Lisa gave him the keys to the BMW in a mall parking lot because his Mercedes was at the auto-mechanic shop. He testified that he had the BMW for one and a half to two weeks and drove approximately 150-200 miles. He claimed that the BMW was in mint condition and that he was not responsible for any alleged damage.

Following the restitution hearing, the district court ordered appellant to pay $16,616.05 in restitution to the dealership, fully reimburse the public defender for the cost of representation, and sell his car, using the proceeds to pay restitution, the public defender's office, and any fines.

## ISSUES

I.     Did the district court abuse its discretion by ordering appellant to pay restitution?

II.     Did the district court err by ordering appellant to fully reimburse the public defender's office without a hearing?

III.    Did the district court abuse its discretion by ordering appellant to sell his car to pay restitution?

**ANALYSIS**

**I.**

Appellant argues that "the district court abused its discretion when it ordered [appellant] to pay restitution because there was insufficient evidence that [appellant] caused the damage and the court made no finding that [appellant] had the ability to pay." We disagree. "[District] courts are given broad discretion in awarding restitution." *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). We therefore review the district court's decision for abuse of discretion. *State v. Nelson*, 796 N.W.2d 343, 346 (Minn. App. 2011).

**A.     Was the evidence sufficient to show that appellant caused the loss?**

Appellant first argues that there was insufficient evidence to show that appellant caused the damage alleged by the dealership. We disagree. A crime victim "has the right to receive restitution as part of the disposition of a criminal charge." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999); Minn. Stat. § 611A.04, subd. 1(a) (2012). The district court "shall consider . . . the amount of economic loss sustained by the victim as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a). "The restitution award must be supported by facts on the record." *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014). The state carries the burden of proving the amount of loss the victim sustained. Minn. Stat. § 611A.045, subd. 3(a). "The amount of

4

restitution, when disputed, must be proved by a preponderance of the evidence." *Nelson*, 796 N.W.2d at 347.

Appellant pleaded guilty to theft of a motor vehicle. The BMW in question was reported stolen in February 2013 and found in appellant's possession on March 4, 2013. Appellant admitted that he possessed the vehicle for one and a half to two weeks. The general manager testified that the BMW was originally worth approximately $110,000, but it had significant damage when it was returned to the dealership, including missing paint, bent rims, a cracked windshield, and increased mileage on the odometer. This damage cost the dealership $6,616.05 to repair.

Moreover, when the vehicle was recovered, it had approximately 1,500 miles on the odometer. The general manager testified that new vehicles, like this BMW, arrive at the dealership with approximately 5 to 25 miles on the odometer. He explained, "a customer wants very few miles, if any, on that particular vehicle. And being that the vehicle had 1,583 miles, we had to discount the vehicle to be able to obviously sell the vehicle." He stated that the vehicle had to be discounted because "obviously we had to tell the customer that it had been stolen and there had been damage . . . . We had to discount the car $10,000 to be able to sell this particular vehicle."

Appellant claims that he could not have caused the damage to the car. He explained, "I handled it with extreme care. Ever since I got my first car at 16, I've had the privilege of driving a luxury foreign vehicle, and I treated it as I have all my other cars, with utmost care and affection." He also stated, "I've had these types of cars my whole entire life. . . . And so there's feasibly no way for me to have done any of this

damage." But appellant admitted that he drove the BMW throughout the Twin Cities during the two-week period that he possessed the car. And, before being apprehended, he was traveling 25-30 miles per hour in a St. Paul alley that the arresting officer described as "rough" and "rutted."

The district court found the general manager's testimony to be more credible than appellant's. Appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *see Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (stating that, on appeal, appellate courts "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder"). We conclude that the evidence is sufficient to show by a preponderance of the evidence that appellant caused the damage to the dealership's vehicle. Consequently, the district court did not abuse its discretion in this respect.

**B.     Did the district court consider appellant's ability to pay when determining whether to order restitution?**

Appellant argues that the district court did not consider his ability to pay restitution. We disagree. In determining whether to order restitution and the amount of restitution, the court shall consider the defendant's ability to pay. Minn. Stat. § 611A.045, subd. 1(a)(2). "There is no strict requirement regarding how the district court should address the issue." *State v. Miller*, 842 N.W.2d 474, 479 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014). The district court is not required to issue specific findings on the defendant's ability to pay. *Id.* If a presentence investigation

report (PSI) is made pursuant to Minn. Stat. § 609.115, subd. 1,[1] it must contain information pertaining to the defendant's ability to pay. Minn. Stat. § 611A.045, subd. 2.

The record includes a PSI, which contains information about appellant's income, resources, and obligations. The district court informed appellant that it would rely on the information in the PSI when making its sentencing decision. At the time of sentencing, appellant was a senior in college with a finance major and economics minor. Appellant's liabilities/debts were $400/month in rent payment and his assets included $4,000 per year in income and a 1993 Mercedes E Class car. The district court also heard evidence regarding appellant's future ability to pay. At his sentencing hearing, appellant addressed the court and stated,

> I've already had job [interviews]. I just had one about three and a half months ago at Investors Bank downtown. Some of my buddies from prep school, their father's [sic] work in investment banking, so it was rather easy for me to network through that.

Although appellant argues that "[h]ad the district court consulted the [PSI], it would have noticed that not only is the 1993 Mercedes Alexander's only asset, but he makes only $4,000 a year and owes $4,800 a year in liabilities," Minnesota courts have upheld restitution orders even when the appellant may not be able to pay the restitution amount. *See State v. Lindsey*, 632 N.W.2d 652, 664 (Minn. 2001) (explaining that the district court considered the defendant's ability to pay when it ordered restitution to be

---

[1] *See* Minn. Stat. § 609.115. subd. 1 (2012) ("[W]hen the defendant has been convicted of a felony, the court shall, before sentence is imposed, cause a presentence investigation and written report to be made to the court concerning the defendant's individual characteristics, circumstances, needs, potentialities, criminal record and social history, the circumstances of the offense and the harm caused by it to others and to the community.")

paid from prison earnings); *State v. Tenerelli*, 583 N.W.2d 1, 3 (Minn. App. 1998), *aff'd as modified*, 598 N.W.2d 668 (Minn. 1999) ("Since the statute is not explicit as to how the court must consider the appellant's ability to pay, the court's reference to the appellant's [prison] earnings as the source of restitution payments shows that the court did in fact consider appellant's payment capabilities."); *State v. Maidi*, 520 N.W.2d 414, 419 (Minn. App. 1994), *aff'd*, 537 N.W.2d 280 (Minn. 1995) ("[A]lthough it is possible that appellant may not be able to pay the entire restitution award, the court was also required to consider [the victim's] economic losses.").

Because, based on the record, the district court considered appellant's ability to pay restitution, we conclude that it did not abuse its discretion.

**II.**

Appellant next argues that the district court erred by ordering him to fully reimburse the public defender's office without conducting a hearing. The state concedes that the district court erred on this point, and we agree. We review an order to reimburse the costs expended by a public defender for abuse of discretion. *See State v. Mozeley*, 450 N.W.2d 149, 152 (Minn. App. 1990).

Under Minn. Stat. § 611.35, subd. 1 (2012),

> Any person who is represented by appointive counsel shall, if financially able to pay, reimburse the governmental unit chargeable with the compensation of appointive counsel for the actual costs to the governmental unit in providing the services of the appointive counsel. The court in hearing such matter shall ascertain the amount of such costs to be charged to the defendant and shall direct reimbursement over a period of not to exceed six months, unless the court for good cause shown shall extend the period of reimbursement.

8

"The proper procedure for obtaining reimbursement for public defender services requires the court to conduct a hearing on the defendant's financial ability to pay." *Foster v. State*, 416 N.W.2d 835, 837 (Minn. App. 1987). The purpose of the hearing is to determine the cost of the public defender's services and whether the defendant has the ability to pay the fee. *Id.*

The district court ordered appellant to fully reimburse the public defender's office in light of appellant's statement that he owns a 21-year-old Mercedes. We note that this appears to be appellant's only asset and that his annual liabilities exceed his annual income by $800. Because the district court did not hold the requisite hearing to determine the cost of the public defender's services and appellant's ability to pay for those services in addition to the restitution ordered, we conclude that it abused its discretion by assessing the entire cost of those services. We therefore remand this issue to allow the district court to conduct such a hearing and issue further findings. *See Foster*, 416 N.W.2d at 837 ("Since the record does not indicate how the court determined the $500 amount in attorney fees assessed against [the appellant] and it does not indicate whether the court made findings on [the appellant's] ability to pay attorney fees, we remand for a hearing and further findings.").

### III.

Finally, appellant argues that the district abused its discretion when it ordered appellant to sell his car to fulfill his restitution obligation because the district court does not have the statutory authority to decide the mechanism by which a defendant pays restitution. We agree. Questions of statutory interpretation are reviewed de novo.

*Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn. 2001); *see Dahlin v. Kroening*, 796 N.W.2d 503, 508 (Minn. 2011) (stating that "[w]hen interpreting the statutes, it is our role to rely on what the Legislature intended over what may appear to be supported by public policy"). When interpreting a statute, "we give words and phrases their plain and ordinary meaning." *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013) (quotation omitted).

The district court initially sentenced appellant to 90 days in the workhouse and three years of probation, and imposed a $500 fine and $21,600 in restitution as conditions of probation. Appellant challenged the amount of restitution, and the district court held a restitution hearing. In a written order, the district court ordered appellant to pay the dealership $16,616.05. In a footnote in this order, the district court also modified appellant's conditions of probation and ordered appellant to fully reimburse the public defender's office, and sell his car to satisfy these obligations.

Minnesota Statutes sections 611A.04-.045 are silent as to whether the court can order a defendant to sell a specific piece of property to pay restitution. But courts in other jurisdictions have addressed this issue. First, in *State v. Schweitzer*, the defendant pleaded guilty to aggravated assault and stalking. 943 P.2d 649, 649 (Utah 1997). Among other things, the defendant challenged the district court's order requiring him to pay restitution by placing a lien on and ordering the sale of his personal and real property. *Id.* at 649-50. Under the Utah restitution statute, the district court has the authority to order a person convicted of a crime that resulted in pecuniary damage to pay restitution after considering the defendant's financial resources and ability to pay. *See* Utah Code

10

Ann. § 76-3-201(4) (2012).  In *Schwietzer,* the court stated "the record reflects that there was some discussion regarding defendant's financial resources, including his monthly income, monthly debts, property, and assets.  However, except for two pieces of real property defendant admitted owning, the record did not contain information as to what other property, real or personal, defendant owns."  943 P.2d at 653.  Thus, the court reasoned,

> While the statute clearly gives trial courts discretion to determine restitution, i.e., to determine whether restitution is appropriate and in what amount the statute contemplates that the restitution order will be enforced according to the Utah Rules of Civil Procedure.  Section 76-2-301(4)(d)(iii) provides that "[a] judgment ordering restitution constitutes a lien when recorded . . . and shall have the same effect and is subject to the same rules as a judgment for money in a civil action."  Under subsection (4)(a)(iv), "the person in whose favor the restitution order is entered may seek enforcement of the restitution order in accordance with the Utah Rules of Civil Procedure," which provide for a hearing to both exclude property exempt from execution and itemize the property available for sale.  Thus, the statute does not authorize the trial court, upon imposing restitution, to also order the sale of defendant's property to satisfy that restitution order.  Rather, it contemplates that the trial court's role is limited to deciding, based on the statutorily imposed factors (primarily the victim's loss and the defendant's resources), whether restitution is appropriate and in what amount. The statute places the responsibility with the party for whom restitution has been ordered to affirmatively enforce the legal judgment.

*Id.* at 653-54 (citations omitted).  The court held that the district court abused its discretion by ordering the sale of the defendant's unknown property to pay restitution and affirmed the district court's restitution order but struck the portion of the restitution order requiring the lien and sale of all of the defendant's property.  *Id.* at 654-55.

11

Although the district court in this case had information regarding appellant's assets when it ordered the sale of appellant's car, Minnesota's restitution statutes also do not explicitly authorize the district court to order the sale of a defendant's property to satisfy a restitution order. *See* Minn. Stat. §§ 611A.04, .045. The statute only permits the district court to determine whether restitution is appropriate and in what amount based on the victim's loss and the defendant's ability to pay. Minn. Stat. § 611A.045, subd. 1(a). If the defendant does not pay restitution, the restitution order "may be enforced by any person named in the order to receive the restitution, or by the Crime Victims Reparations Board in the same manner as a judgment in a civil action." Minn. Stat. § 611A.04, subd. 3.[2]

A judgment in a civil action is enforced as follows. Except as otherwise provided, "every [civil] judgment requiring the payment of money shall be entered by the court administrator when ordered by the court and will be docketed by the court administrator upon the filing of [the required] affidavit." Minn. Stat. § 548.09, subd. 1 (2012). "From the time of docketing the judgment is a lien, in the amount unpaid, upon all real property in the county then or thereafter owned by the judgment debtor." *Id.*

> [I]f a judgment has been docketed in district court for at least 30 days, and the judgment is not satisfied, the judgment creditor's attorney . . . or the district court . . . shall, upon request of the judgment creditor, order the judgment debtor to

---

[2] Alternatively, when a probationer is required to pay restitution as a condition of probation and fails to do so, the statute provides that the court may conduct a hearing to either (1) change the conditions of probation, (2) revoke probation, or (3) extend the term of probation for up to one year if it finds that the probationer has not paid restitution and is not likely to pay it before probation expires. Minn. Stat. § 609.135, subds. la, 2(g) (2012).

> mail by certified mail to the judgment creditor information as to the nature, amount, identity, and locations of all the debtor's assets, liabilities, and personal earnings.

Minn. Stat. § 550.011 (2012). "[T]he information shall be sufficiently detailed to enable the judgment creditor to obtain satisfaction of the judgment by way of execution on nonexempt assets and earnings of the judgment debtor." *Id.* "Where a judgment requires the payment of money . . . it may be enforced in those respects by execution." Minn. Stat. § 550.02 (2012). "The officer shall execute the writ against the property of the judgment debtor by levying upon the same . . . and paying to the judgment creditor the proceeds, or so much thereof as will satisfy the execution." Minn. Stat. § 550.08 (2012). "All property, real and personal, including rights and shares in the stock of corporations, money, book accounts, credits, negotiable instruments, and other evidences of indebtedness, may be levied upon and sold on execution." Minn. Stat. § 550.10 (2012). Thus, under the current state of the law, to ensure that restitution is paid, the proper course of action for the district court to take is to order a pecuniary amount of restitution; if appellant defaults, the victim can obtain satisfaction of the judgment against appellant by way of execution on appellant's car.

The Oregon Court of Appeals has also addressed a similar issue. In *State v. Montgomery*, the defendant was convicted of two counts of first-degree theft. 806 P.2d 183, 184 (Or. Ct. App. 1991). At sentencing, the district court ordered him to pay costs, attorney fees, and restitution and to sell his car to satisfy those obligations. *Id.* The Oregon Court of Appeals determined that "the [district] court had no authority to order

13

defendant to sell his car," and that the error was apparent on the face of the record and needed to be corrected. *Id.* It remanded the case to the district court for resentencing. *Id.*

After *Montgomery*, the Oregon Legislature enacted a statute stating:

> (2) In addition to the general conditions, the court may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both, including, but not limited to, that the probationer shall:
>
> . . . .
> (c) For crimes committed on or after December 5, 1996, sell any assets of the probationer as specifically ordered by the court in order to pay restitution.

Or. Stat. § 137.540 (2012). The state relies on an Oregon case that occurred after the enactment of this statute to argue that the court acted within its discretion when it ordered appellant to sell his car. *See State v. Plumb*, 87 P.3d 676, 680 (Or. Ct. App. 2004). But *Plumb* is inapposite; in that case the district court, apparently relying on Or. Stat. § 137.540, ordered the defendant to convey all interest in real property and her IRA and 401(k) to the victim to satisfy the $1 million dollar restitution order. *Id.* at 676-78. The defendant did not challenge the district court's ability to convey interest in real property to fulfill the restitution order but instead successfully argued that the 401(k) was exempt from restitution based on federal law. *Id.* at 678-79.

The state also relies on *United States v. Harris*, 192 Fed. Appx. 642 (9th Cir. 2006), to argue that the court did not err when it required appellant to sell his car to pay

restitution.[3]  In *Harris*, the defendant appealed the district court's modification of the conditions of his supervised release.  *Id.* at 643.  He was ordered to pay restitution as part of his sentence.  *Id.*  After violating four conditions of his release, including failing to register his vehicle and failing to pay restitution, the district court ordered the defendant to turn over the title of his vehicle so that the government could sell it and apply the proceeds toward restitution.  *Id.* at 644.  The defendant consented to the condition.  *Id.*  The court determined that the unobjected-to modification did not constitute plain error.  *Id.*  *Harris* is distinguishable from the case at hand.  First, the defendant in *Harris* was given the opportunity to pay restitution before the district court ordered him to sell his vehicle.  He violated his conditional release, which prompted the district court's action.  Here, appellant was not given the opportunity to pay restitution before the district court ordered him to sell his car.  Furthermore, a specific federal statute authorizes the district court to order the sale of a defendant's property upon a finding that the defendant is in default on a payment of a fine or restitution.  *See* 18 U.S.C. § 3613A(a)(1).  Minnesota has no such statute.  Therefore, *Harris* is not directly applicable to this case.

Overall, *Schwietzer* and *Montgomery* are instructive.  Under the plain language of Minn. Stat. §§ 611A.04, .045, the district court is not authorized to order a defendant to sell personal property to satisfy a restitution order.  Consequently, we conclude that the

---

[3] *Harris* was issued before 2007 and not selected for publication in the Federal Reporter and therefore is not precedential.  *See* 9th Cir. R. 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."); Fed. R. App. P. 32.1, cmt. a ("The citation of unpublished opinions issued before January 1, 2007, will continue to be governed by the local rules of the circuits.").

district court abused its discretion by ordering appellant to sell his car to satisfy his restitution requirements and reverse and remand for resentencing. It may well be that a district court should have the authority to order a defendant to sell personal property to satisfy a restitution order, but it is up to the legislature, and not us, to change the law. *See Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks.").

## D E C I S I O N

Because there was sufficient evidence to show by a preponderance of the evidence that appellant caused the dealership's loss and because the district court considered appellant's ability to pay restitution, the district court did not abuse its discretion by ordering appellant to pay restitution. Because the district court erred by ordering appellant to reimburse the public defender's office without holding the required hearing, and because, based on the plain language of Minn. Stat. §§ 611A.04, .045, the district court does not have the statutory authority to order an offender to sell personal property to fulfill a restitution order, we reverse and remand for resentencing.

**Affirmed in part, reversed in part, and remanded.**