**STATE of Minnesota, Respondent,**

v.

**Aaron Ronald MILLER, Appellant.**

**No. A13–0264.**

Court of Appeals of Minnesota.

Feb. 10, 2014.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Brian Melton, Clay County Attorney, Heidi M.F. Davies, Assistant County Attorney, Moorhead, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by HALBROOKS, Presiding Judge; PETERSON, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Aaron Miller and Jeremy Sandberg severely beat and seriously injured Steven Montplaisir during a fight after a party. The district court found that Miller and Sandberg caused Montplaisir's injuries but it could not identify which injuries either defendant inflicted. It awarded restitution of $12,250 to Montplaisir and his insurer, holding Miller and Sandberg jointly and severally responsible for payment. In this appeal from that decision, we hold that the district court did not abuse its discretion by imposing joint and several liability be-

cause the state proved that both assailants directly caused Montplaisir's injuries under circumstances that prevent the victim or the district court from identifying the assailant who inflicted any particular wound. We also detect no partiality in the district court's sua sponte ordering of a new restitution hearing after the state's efforts left the court unable to find facts to address the victim's restitution right. But we reverse in part and remand for the district court to make new findings on Miller's ability to pay the restitution in 90 days after it previously acknowledged that he needed a year.

## FACTS

Aaron Miller and Jeremy Sandberg fought Steven Montplaisir in October 2011 at a bonfire party hosted by mutual friends. Montplaisir met Miller and Sandberg for the first time that evening. A squabble ensued after Montplaisir accused Sandberg of sexual improprieties and mistreatment involving a woman related to neither of them. The squabble simmered and calmed until the only remaining partiers were Miller, Sandberg, Montplaisir, Miller's girlfriend, and one of the party's hosts.

Montplaisir got into his pickup truck to leave, but Miller's pickup was blocking his exit. Miller approached and took Montplaisir's keys, demanding that he apologize to Sandberg. Someone then hit Montplaisir. He fell unconscious, awoke, and then gained the upper hand. He pinned Sandberg to the ground. Miller joined the fracas, placing Montplaisir in a choke hold. The three fought longer, until Montplaisir was beaten so badly that the host did not immediately recognize him. Miller and Sandberg were also injured substantially.

Montplaisir went to the hospital the next day and was diagnosed with cuts, a cracked rib, and a collapsed lung. A shoeprint was visible on his head. Clay County Sheriff's Deputy Scott Steffes interviewed Montplaisir in the hospital and Sandberg and Miller in their homes. Their statements were mostly consistent. The state charged Miller and Sandberg with third-degree assault. Montplaisir filed a claim for $4,169 in restitution. BlueCross BlueShield of North Dakota, Montplaisir's insurer, also filed a restitution claim to recoup $8,180 in medical expenses.

Miller pleaded guilty to disorderly conduct. He admitted to splitting a knuckle while "throw[ing] one punch" and, perhaps, "accidentally hit[ting Montplaisir's] tooth." The district court accepted his plea and stayed his sentence provided that he pay fines and restitution. It then issued an undetermined joint-and-several-restitution order against Miller and Sandberg and scheduled a hearing to settle the amount. Miller's counsel noted that Miller was unemployed and requested that he have one year to pay his fines and any restitution. The district court orally agreed to "allow a year to pay the fines and fees and restitution, if any."

The district court accepted testimony at the joint hearing on restitution, hearing roughly the version of events described above. The district court found that the state had not adequately represented the victim's interests in the restitution hearing by calling only Montplaisir, whose memory was hazy due to his injuries, and it ordered a second hearing at which Deputy Steffes testified. Neither restitution hearing addressed Miller's ability to pay, so the only discussion of that issue was what was said at the plea hearing. The district court found Miller and Sandberg directly responsible for Montplaisir's injuries and ordered them jointly and severally liable for $12,250 in restitution to Montplaisir and BlueCross BlueShield. The order did not

mention the court's prior understanding that Miller needed a one-year payment period, and it expressly permitted Montplaisir and the insurer to convert the restitution award into a civil judgment after only 90 days.

Miller appeals the restitution order.

## ISSUES

I. Did the district court abuse its discretion by obliging Miller to pay joint and several restitution with his codefendant?

II. Did the district court abuse its discretion by ordering, sua sponte, a rehearing on restitution and compelling the state to produce a new witness at that hearing?

III. Did the district court abuse its discretion by failing to consider Miller's ability to pay the restitution award in the specified timeframe?

## ANALYSIS

Miller asks us to reverse the restitution order. He first challenges its joint and several nature. He next challenges the district court's authority to order a second hearing at which Deputy Steffes would testify. And he challenges the district court's failure to consider his inability to pay the award in the time allotted. We are persuaded only by his third argument.

### I

▮ District courts have broad discretion to award restitution. *State v. Tenerelli,* 598 N.W.2d 668, 671 (Minn.1999). We therefore review the district court's decision for abuse of discretion. *State v. Nelson,* 796 N.W.2d 343, 346 (Minn.App. 2011).

▮ Miller first argues that the district court abused its discretion by ordering

restitution because the state failed to prove that he is directly responsible for Montplaisir's injuries. Crime victims are entitled to restitution for losses they incur from the crime. Minn.Stat. § 611A.04, subd. 1(a) (2012); *State v. Latimer,* 604 N.W.2d 103, 105 (Minn.App.1999). The district. court "shall consider ... the amount of economic loss sustained by the victim as a result of the offense; and ... the income, resources, and obligations of the defendant." Minn.Stat. § 611A.045, subd. 1(a) (2012). The restitution award must be supported by facts on the record. *See State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984) (remanding case because record did not provide factual basis for restitution award). And the state bears the burden of proving the amount of the victim's loss and the appropriateness of a restitution award. Minn.Stat. § 611A.045, subd. 3(a).

▮ Restitution has limits. The district court should order restitution only for losses the defendant "directly caused" by the conduct that led to his conviction. *State v. Olson,* 381 N.W.2d 899, 901 (Minn. App.1986). It may not order restitution for conduct that is only tangentially related to the criminal act that caused the loss. *Compare Latimer,* 604 N.W.2d at 105 (holding restitution for losses directly attributable to victim's murder improper against defendant who helped conceal murder afterwards but otherwise took no part in it), *and State v. Esler,* 553 N.W.2d 61, 65 (Minn.App.1996) (holding restitution improper when awarded to homeowner for property damage caused by convicted murderer during "random 'target practice'" earlier in day of murder), *review denied* (Minn. Oct. 15, 1996), *with Olson,* 381 N.W.2d at 901 (affirming restitution award against defendant convicted of burglary but acquitted of theft stemming from same incident). And joint and several liability

for restitution is inappropriate if one defendant was not somehow responsible for the conduct of his codefendants. *Nelson*, 796 N.W.2d at 348.

 Miller argues that he can be held liable only for the injuries and losses he directly inflicted even though they are indistinguishable from the injuries and losses that his cofighter inflicted on their victim. Because no one can account for any of the blows particularly, Miller's argument would leave the victim to endure his own losses with neither assailant responsible for restitution. But *someone* put the footprint on Montplaisir's head, and it wasn't Montplaisir. And the district court has the duty to effectuate the statute establishing that the "victim of a crime has the right to receive restitution as part of the disposition of a criminal charge." Minn.Stat. § 611A.04, subd. 1(a). It knew that Miller helped initiate the fight. And it knew that Miller and Sandberg are the only ones who could link any of their blows to any of Montplaisir's specific injuries because one of them rendered Montplaisir unconscious during part of the melee. The district court was therefore left to put the burden of the uncertainty either on the victim, leaving him with no restitution, or on his assailants, leaving them to resolve among themselves how much each should pay. Neither the restitution statute nor any caselaw cited by Miller directs the answer, but both strongly emphasize the importance of restitution. We therefore hold that the district court acted within its discretion by ordering joint-and-several-restitution liability under these circumstances, favoring the victim's statutory right to restitution for injuries that certainly exist over the assailants' right not to pay for an injury that might have been caused by another.

Our holding is consistent with analogous caselaw. In *State v. Arends*, for example, we held that a complete civil settlement of all claims in a suit between parties who are the defendant and victim in a related criminal matter precludes the state from seeking criminal restitution on behalf of that victim. 786 N.W.2d 885, 889–90 (Minn. App.2010), *review denied* (Minn. Oct. 27, 2010). The *Arends* holding implicitly recognizes the unity between civil damages and criminal restitution. And in a civil action for damages under circumstances involving a joint attack causing indivisible injuries on a single victim, the law is well settled in favor of joint and several liability. *See Mathews v. Mills*, 288 Minn. 16, 20, 178 N.W.2d 841, 844 (1970) (holding that multiple civil defendants are jointly and severally liable when their independent consecutive acts of negligence cause indivisible injuries to the plaintiff); *Wrabek v. Suchomel*, 145 Minn. 468, 473, 177 N.W. 764, 766 (1920) (affirming jury instruction "that all who conspired, advised, encouraged, aided, or abetted in the commission of the assault were jointly and severally liable").

We affirm the district court's decision to order joint and several restitution.

## II

 Miller also contends that the district court abused its discretion by ordering, sua sponte, a rehearing on the issue of restitution. He correctly states that the statutes governing restitution do not expressly authorize the district court to order a second hearing on its own initiative or to compel the state to produce a specific witness. *See* Minn.Stat. §§ 611A.04, 611A.045. And the district court should remain neutral in litigation, including in a criminal prosecution between the state and a criminal defendant. *See* Minn.Code Jud. Conduct Canon 2 ("A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently."); Minn.

Code Jud. Conduct Rule 2.2 (same); *United States v. Leon*, 468 U.S. 897, 917, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984) (noting that "[j]udges ... are not adjuncts to the law enforcement team"). But unlike other aspects of a criminal action, which focus almost entirely on the competing justice and fairness interests between the state's duties and the defendant's rights, the restitution proceeding uniquely and expressly implicates a nonparty: "a *victim* of a crime has the right to receive restitution." Minn.Stat. § 611A.04, subd. 1(a) (emphasis added). The victim, an interested, typically unrepresented nonparty to the criminal proceeding, has rights and interests aligned with but independent of the state's interests. This independent right authorizes the district court to order restitution even when the victim does not request it. *State v. Gaiovnik*, 794 N.W.2d 643, 652 (Minn.2011) (affirming restitution based on a felony conviction where victim did not make a restitution claim). We hold that the district court does not abuse its discretion or act with partiality by ordering a new hearing and requiring the state to present witnesses that the district court deems helpful to fulfill the court's duty to vindicate a victim's statutory right to restitution.

### III

■ Miller finally argues that the district court abused its discretion by failing to consider his inability to pay restitution. The district court must account for the defendant's ability to pay when ordering restitution. Minn.Stat. § 611A.045, subd. 1(a)(2). There is no strict requirement regarding *how* the district court should address the issue. *State v. Maidi*, 537 N.W.2d 280, 285–86 (Minn.1995) (affirming a restitution award even though it was mathematically impossible for defendant to pay entire amount with his hourly wage). And the district court need not issue specific findings on the defendant's ability to pay. *State v. Jola*, 409 N.W.2d 17, 20 (Minn.App.1987). It is adequate, for example, for the district court to state that it considered the defendant's future prison wages when assessing his ability to pay. *State v. Lindsey*, 632 N.W.2d 652, 664 (Minn.2001). But the district court cannot completely fail to consider the defendant's ability to pay if there is no presentence report addressing the issue. *Nelson*, 796 N.W.2d at 349 (affirming an award, despite district court's failure to address defendant college student's ability to pay, because defendant conceded she could afford to pay amount awarded).

■ We cannot affirm the restitution order here. The record does not include a presentence report, and the district court never discussed with the parties or even mentioned Miller's ability to pay during either restitution hearing. It did state a negative finding of fact that Miller had not introduced evidence "that [he] did not have resources to pay the full amount of restitution." The district court then ordered Miller, who was unemployed and qualified for public defense, to pay his share of the $12,250 restitution amount within 90 days, rather than the one-year period that Miller had asked for and that the court previously accepted. Without explaining why, the district court disregarded its previous commitment to give Miller one year to pay. The record does not provide any apparent basis for us to infer his ability to pay in the limited timeframe. And the state concedes on appeal that Miller should have been given one year to pay.

Given the original understanding that Miller should have one year to pay, the lack of any later finding (or evidence to support an implied finding) that Miller had the resources to pay in significantly less time, and the state's concession, we hold

that the district court acted outside of its discretion by ordering that the restitution amount be paid in the reduced timeframe.

We therefore reverse and remand to the district court to make findings detailing Miller's ability to pay within the time period specified or to modify the amount of or deadline for restitution consistent with his ability to pay.

## DECISION

The district court did not abuse its discretion by deeming Miller jointly and severally liable for restitution for his and Sandberg's indivisible blows and the indistinguishable injuries they inflicted. Nor did it abuse its discretion by ordering a new hearing and requiring the state to present new witnesses necessary to determine restitution. But we reverse and remand because the district court originally recognized a need for a lengthy restitution period but then failed to make findings relevant to Miller's ability to pay restitution within a much shorter timeframe under circumstances that do not permit us to infer the basis for the alteration.

**Affirmed in part, reversed in part, and remanded.**