*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0936**

State of Minnesota,
Respondent,

vs.

Robert Neil Ackland,
Appellant.

**Filed November 28, 2016
Affirmed
Smith, John, Judge**[*]

Freeborn County District Court
File No. 24-CR-14-1556

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David J. Walker, Freeborn County Attorney, Paige L. Starkey, Assistant County Attorney, Albert Lea, Minnesota (for respondent)

David W. VanDerHeyden, VanDerHeyden Law Office, P.A., Rochester, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Smith, Tracy M., Judge; and

Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the district court's order for restitution because the district court considered appellant's ability to pay and did not abuse its discretion in ordering appellant to pay restitution during the term of his probation.

**FACTS**

The state charged appellant Robert Neil Ackland with felony theft for the theft of over one hundred and forty tons of railyard materials from the victim T.B.'s property in February 2013.

Ackland pleaded guilty to gross-misdemeanor theft. T.B.'s restitution affidavit averred that the value of the stolen property totaled $36,900, at a market price of $300 per ton. The district court sentenced Ackland to two years' probation, stayed execution of one year's imprisonment, and ordered Ackland to pay $36,900 in restitution to T.B

Ackland challenged the restitution award at the district court. Before the restitution hearing, T.B. filed an amended restitution affidavit, asking the district court to order restitution in the amount of $42,659.40, which reflected adjustments in the quantity of property stolen calculated by T.B.

Ackland testified that the materials stolen from T.B.'s property were in "deteriorated" condition. He also testified that I-35 Auto Recycling purchased the property at $225 per ton and $225 per ton was the prevailing fair market price. Ackland also testified that in the salvage industry, proceeds from scrap sales are divided between the owner and laborer—the owner receives one-third of the proceeds, and the laborers receive the

2

remaining two-thirds as overhead.  He also testified that he was in poor physical health, that he hopes to return to work when his health is restored, and that his income comes from social security and military disability payments.  Ackland also testified about his financial obligations and assets, which included commercial vehicles and a rental property.

The district court granted T.B.'s request for restitution and ordered Ackland to pay restitution in the amount of $39,609.15.  In its written order, the district court made findings of fact regarding the condition, weight, and quantity of railroad property taken from T.B.'s property, the method by which T.B. calculated the weight and quantity of stolen property, the prevailing fair market value of the property in February 2013, and factors bearing on Ackland's ability to pay restitution.  The district court concluded that the state had proved by a preponderance of the evidence that Ackland had stolen and sold 141.46125 tons of rail, splices, spikes, and plates when the fair market value of the property was $280 per ton. The district court gave Ackland "the entire period of probation to satisfy [the] Restitution Order."

Ackland appeals.

**D E C I S I O N**

The victim of a crime has a right to restitution if the perpetrator is convicted.  Minn. Stat. § 611A.04, subd. 1 (2014).  When determining whether to order restitution and in what amount, the district court "shall consider . . . the amount of economic loss sustained by the victim as a result of the offense; and [] the income, resources, and obligations of the defendant. *Id.* § 611A.045, subd. 1(a).  A victim's request for restitution "may include, but is not limited to, any out-of-pocket losses resulting from the crime." *Id.* § 611A.04, subd.

3

1. A district court has "significant discretion" to award restitution, and we affirm a district court's order of restitution unless there has been an abuse of discretion. *State v. Tenerelli*, 598 N.W.2d 668, 671-72 (Minn. 1999). The district court "abuses its discretion when it acts arbitrarily, without justification, or in contravention of the law." *State v. Mix*, 646 N.W.2d 247, 250 (Minn. 2002).

A restitution award must be supported by facts in the record. *See State v. Fader*, 358 N.W.2d 42, 48 (Minn. 1984) (remanding where the record did not provide factual basis to support the amount of restitution ordered). "The district court's factual findings will not be disturbed unless they are clearly erroneous." *State v. Andersen*, 871 N.W.2d 910, 913 (Minn. 2015), *reh'g denied* (Minn. Jan. 21, 2016) (citing *Dobbins v. State*, 788 N.W.2d 719, 725 (Minn. 2010)).

Ackland argues that the district court failed to make conclusions of law as to his ability to pay restitution and how restitution payments were to be made. In addition, he argues that T.B.'s restitution award should be reduced by the labor and transportation costs incurred by Ackland in bringing the property to market. Lastly, Ackland argues that the district court abused its discretion when it ascribed value to the property based on T.B.'s calculations of its weight, quantity, and fair market value.

We first address whether the district court abused its discretion when it considered Ackland's ability to pay. A presentence investigation for a case involving restitution must contain information about the defendant's ability to pay. Minn. Stat. § 611A.045, subd. 2. When the district court determines whether and in what amount to order restitution, it must consider a defendant's financial resources and obligations in addition to the victim's

4

economic loss. *Id.*, subd. 1. Though the district court has a duty to consider a defendant's ability to pay, "it has no specific obligation to make findings on an offender's ability to pay it." *State v. Nelson*, 796 N.W.2d 343, 349 (Minn. App. 2011). In fact, "[t]here is no strict requirement regarding *how* the district court should address the issue." *State v. Miller*, 842 N.W.2d 474, 479 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014). It is adequate, for example, if the district court simply states that it considered a defendant's future wages when determining ability to pay. *State v. Lindsey*, 632 N.W.2d 652, 663-64 (Minn. 2001). It is not an abuse of discretion if the district court ultimately orders restitution in an amount larger than the defendant can ever pay. *See, e.g.*, *id.* (finding no abuse of discretion for failure to consider defendant's ability to pay where the trial court ordered an indigent defendant to pay $32,682.93 in restitution using prison wages); *State v. Maidi*, 537 N.W.2d 280, 285 (Minn. 1995) (finding no abuse of discretion where the trial court ordered a restitution award that was mathematically impossible to pay based on the defendant's wages); *but see Miller*, 842 N.W.2d at 479 (reversing a restitution order because the record lacked a presentence investigation addressing ability to pay, the district court failed to make findings on the defendant's ability to pay, and ordered a large restitution payment in an abbreviated time frame).

The district court considered Ackland's ability to pay. Factors bearing on Ackland's ability to pay were mentioned in the presentence investigation, thoroughly discussed during the restitution hearing, and appear in the district court's findings of fact. Further, the judge questioned Ackland directly about his health and financial resources. Both Ackland's counsel and the state elicited testimony from Ackland about factors bearing on his ability

5

to pay. In its order, the district court made factual findings about Ackland's health, assets, household income, and financial obligations. It also acknowledged Ackland's age of 75 years, his poor physical health, and his limited income from social security, military disability, and his wife's pension and income from music lessons. The district court also noted Ackland's intent to return to work once his health is restored. On this record, the district court did not abuse its discretion and sufficiently considered Ackland's ability to pay restitution.

We next consider whether the district court abused its discretion when it rejected Ackland's suggestion to reduce T.B.'s restitution award by the costs incurred by Ackland to bring the stolen property to market. According to Ackland's testimony, it is standard industry practice that the owner of salvaged property retains one-third of the market price and the remaining two-thirds is paid to labor. Therefore, Ackland asserts, T.B. is entitled to a restitution award comprising one-third of the market price of the property, which represents the "actual net proceeds [he] would have realized." However, Ackland cites no legal authority to support his assertion that the victim of a theft should effectively recompense the perpetrator for the cost of realizing value in stolen property. When ordering restitution, the district court "shall consider . . . the amount of economic loss sustained by *the victim* as a result of the offense . . . ." Minn. Stat. § 611A.045, subd. 1(a) (emphasis added); *see also State v. Harvey*, 547 N.W.2d 706, 708-09 (Minn. App. 1996) ("If a trial court seeks, in setting restitution, to compensate for loss, . . . then the amount should be based on the victim's injury."). Here, the district court calculated T.B.'s economic loss as the fair market value of his stolen property, as measured by the property's

tonnage and the prevailing price that salvagers would have paid T.B. if he had chosen to scrap the property himself in February 2013. We conclude that the district court did not abuse its discretion when it declined to reduce the restitution award in the manner suggested by Ackland.

We now turn to Ackland's contention that the district court abused its discretion when it calculated the value of T.B.'s property and declined to order restitution based on the actual amount paid by I-35 Auto Recycling to Ackland. "A dispute as to the proper amount or type of restitution must be resolved by the court by the preponderance of the evidence," and "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense and the appropriateness of a particular type of restitution is on the prosecution." Minn. Stat. § 611A.045, subd. 3(a). At the restitution hearing, the state offered testimony of T.B., a police investigator, and the manager at I-35 Auto Recycling regarding the valuation of the stolen property. We defer to the district court's credibility determinations. *State v. Alexander*, 855 N.W.2d 340, 344 (Minn. App. 2014).

The district court found that the state met its burden of proving the value of T.B.'s stolen property. The state offered T.B.'s detailed testimony about how he measured and verified the length and weight of the 141.46125 tons of stolen rail, spikes, splices, and plates. T.B. testified that the property's condition was "fine" and "not deteriorated." T.B. also testified about his conversations with an area salvager who would have paid $300 per ton in February 2013 and required proof of ownership. The state offered the testimony of the manager of I-35 Auto Recycling, who testified that he purchased Ackland's stolen property for $225 per ton without requiring proof of ownership. The state also offered the

7

testimony of an investigating police detective, who testified that two area salvagers would have required proof of ownership before accepting scrap, and one would have paid $280 to $290 per ton in February 2013. The district court did not abuse its discretion when it credited the state's evidence and ordered restitution in the amount of $39.609.15 where Ackland stole 141.46125 tons of T.B.'s property when the prevailing market rate was $280 per ton.

We conclude that the district court did not abuse its discretion when awarding restitution because it considered Ackland's ability to pay and correctly ascribed value to the stolen property.

**Affirmed**.