**In the MATTER OF the WELFARE OF: I.N.A., Child.**

**A17-0053**

Court of Appeals of Minnesota.

Filed September 5, 2017

Review Denied Nov. 28, 2017

Mary F. Moriarty, Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant I.N.A.).

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent).

Considered and decided by Cleary, Chief Judge; Kirk, Judge; and Florey, Judge.

## OPINION

CLEARY, Chief Judge

On appeal from the district court's restitution order modifying disposition, appellant I.N.A. argues that the district court erred in ordering $12,529.90 in restitution because it (1) lacked the statutory authority to impose a restitution obligation as part of a continuance without adjudication in a juvenile-delinquency proceeding, (2) failed to make sufficient written findings under Minnesota Rule of Juvenile Delinquency Procedure 15.05, (3) failed to consider I.N.A.'s ability to pay, and (4) failed

to differentiate between the damage caused by I.N.A. and a co-respondent.

We affirm in part because the district court possessed the statutory authority to order restitution as part of a continuance without adjudication in a juvenile-delinquency proceeding. We reverse in part and remand because (1) the district court did not make sufficient written findings pursuant to Minn. R. Juv. Delinq. P. 15.05, and (2) consequently the monthly amount of restitution ordered is not clear and we cannot determine whether the district court fully considered I.N.A.'s ability to pay such a monthly amount. We also remand for the district court to determine whether I.N.A. can be held liable for the entire damage without differentiating between the damage caused by I.N.A. and a co-respondent, whose case was dismissed.

## FACTS

On May 5, 2015, 14-year-old I.N.A. was charged with first-degree criminal damage to property and trespassing for vandalizing property in a public park in Hopkins. After a local resident called police due to noise at the park, law enforcement found I.N.A. and B.D.B. near the park. I.N.A. told law enforcement that he and B.D.B. had been hitting the doors of several buildings and that they used a crowbar and small axe to cause damage to several buildings. B.D.B. said that I.N.A. and an unknown third person found an axe and crowbar sitting next to one of the park sheds and that the three gained entry into park buildings and equipment sheds. B.D.B. also stated that the group damaged doors and an electrical box.

Law enforcement assessed the damage at the park and noted damage to all three equipment sheds. Officers noted that the damage and holes in a door were consistent with an axe. Additionally, the officers noticed that door handles, two electrical boxes on the side of an equipment shed, and two speakers on the side of another shed were damaged. The damage totaled $12,529.90.

On February 22, 2016, the district court ordered a psychological competency evaluation for I.N.A. That same day, B.D.B. was found incompetent to proceed and the petition filed against him was dismissed.

The psychological evaluator found that I.N.A. met the criteria to be considered a child with "severe emotional disturbance" as defined in the Minnesota Comprehensive Children's Mental Health Act but opined that I.N.A. was competent to proceed because he demonstrated an adequate factual and rational understanding of general legal proceedings and his own case.

On May 18, 2016, the district court found I.N.A. competent to proceed. That day I.N.A. pleaded guilty to count 1, criminal damage to property, with the understanding that count 2, trespassing, would be dismissed. The parties were free to argue whether the court should adjudicate I.N.A. as a juvenile delinquent. The district court continued the case without adjudication for two periods of 180 days conditioned on, among other things, I.N.A.'s adherence to supervised probation and on paying restitution in the amount of $12,529.90.

In June 2016, I.N.A. moved for a contested restitution hearing, which was held in December 2016. At the hearing, an officer from Hennepin County juvenile probation and the park superintendent from the City of Hopkins testified as to how the $12,529.90 in damage was calculated. I.N.A.'s mother, E.A., also testified at the hearing regarding I.N.A.'s ability to pay restitution. She testified that paying the $12,529.90 would be a financial hardship on her family. She stated that I.N.A. has ADHD, is dyslexic, missed developmental

milestones in early childhood, received special education in school, and has very reactionary behavior. She feared that I.N.A.'s disabilities would prevent him from finding a job. She stated that her family could "maybe" afford to pay $50 per month in restitution.

On December 19, 2016, the district court ordered I.N.A. to pay restitution in the full amount. The district court found the state's witnesses credible and found that the bills for repairs were reasonable and attributable to I.N.A.'s actions. The district court found that I.N.A. had the ability to pay smaller (not "small") monthly installments by finding a part-time job.

I.N.A. now appeals the district court's restitution order modifying disposition. Pending this appeal, the district court stayed its order, tolling the timeframe for the continuance without adjudication.

## ISSUES

I. Does a district court have the statutory authority to order restitution as part of a continuance without a finding of delinquency in a juvenile-delinquency case?

II. Did the district court err by failing to make explicit written findings in its orders pursuant to Minnesota Rule of Juvenile Delinquency Procedure 15.05?

III. Did the district court err by failing to consider I.N.A.'s ability to pay the restitution obligation of $12,529.90 in smaller monthly installments?

IV. Did the district court err in ordering I.N.A. responsible for the full amount of damage without differentiating between the damage caused by I.N.A. and B.D.B.?

## ANALYSIS

### I. Statutory Authority to Impose Restitution as Part of a Stay of Adjudication

I.N.A. first challenges the restitution order by arguing that the district court lacked the statutory authority to order restitution as part of a continuance without adjudication.

 As a threshold matter, we must determine whether this issue is reviewable because I.N.A. did not raise it before the district court. Ordinarily, appellate courts "will not decide issues which were not raised before the district court." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). This rule, however, is not ironclad. *Putz v. Putz*, 645 N.W.2d 343, 350 (Minn. 2002). Appellate courts may "take any other action as the interest of justice may require." Minn. R. Civ. App. P. 103.04. One "well-established" exception to the general rule is that an appellate court may base its decision upon a theory not presented to the district court when "the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits," and when "there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question," such as a case with undisputed facts. *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997) (quotation omitted); *see State v. Kier*, 678 N.W.2d 672, 675-76 (Minn. App. 2004) (applying the factors in *Watson* to a criminal case), *review denied* (Minn. June 15, 2004).

 Here, the issue of whether the district court had the statutory authority to order restitution as part of a stay of adjudication could be decisive of the entire controversy because, if the court lacked authority to order restitution, the order would have been made in error. Second, no

party is advantaged or disadvantaged by the lack of a district court ruling because the issue is purely a legal question with undisputed facts. Both parties fully addressed and briefed the issue to this court, and no factual record needs to be developed. We conclude that the "well-established" exception to the general rule is satisfied in this case, and we move on to the merits.

I.N.A.'s argument presents a question of statutory interpretation, which we review de novo.[1] *In re Welfare of S.R.S.*, 756 N.W.2d 123, 126 (Minn. App. 2008), *review denied* (Minn. Dec. 16, 2008). "When the Legislature's intent is discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted; and courts apply the statute's plain meaning." *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014). However, if the literal meaning of the words of a statute would produce an absurd result, Minnesota courts look beyond the statutory language to other indicia of legislative intent. Minn. Stat. § 645.17 (2016); *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn. 1997); *see Wegener v. Comm'r of Revenue*, 505 N.W.2d 612, 617 (Minn. 1993) (noting courts are obliged to reject a construction that leads to unreasonable results, which "utterly depart from the purpose of the statute").

In juvenile-delinquency matters, restitution is governed by both the restitu-

tion provision of the juvenile-delinquency statute under Minn. Stat. § 260B.198, subd. 1(5) (2016), and the general restitution statute under Minn. Stat. § 611A.04 (2016). *In re Welfare of H.A.D.*, 764 N.W.2d 64, 66 (Minn. 2009).

The juvenile-delinquency restitution statute provides:

> If the court finds that the child is delinquent, it shall enter an order making any of the following dispositions of the case which are deemed necessary to the rehabilitation of the child:
>
> . . . .
>
> (5) if the child is found to have violated a state or local law or ordinance which has resulted in damage to the person or property of another, the court may order the child to make reasonable restitution for such damage[.]

Minn. Stat. § 260B.198, subd. 1 (2016).

Additionally, a district court may stay adjudication and continue a case for not more than two periods of 180 days. *Id.*, subd. 7(a). During the continuance, "the court may enter an order in accordance with the provisions of subdivision 1," which includes ordering restitution under subdivision 1(5). *Id.*

But the general restitution statute provides: "A victim of a crime has the right to receive restitution as part of the disposition of a criminal charge or juvenile delinquency proceeding against the offender if the offender is convicted *or found delin-*

---

1. The parties dispute the applicable standard of review. The state cites *State v. Thomas*, 467 N.W.2d 324 (Minn. App. 1991), for the proposition that a "sentencing issue raised for the first time on appeal is reviewed for plain error." While this court in *Thomas* applied the plain-error test where an appellant challenged the constitutionality of his sentence for the first time on appeal, 467 N.W.2d at 327-28, this court's decision in *State v. Thole*, 614 N.W.2d 231 (Minn. App. 2000), is more on point. In *Thole*, this court held that when a

defendant appeals a restitution order and fails to raise issues on appeal, the plain-error test does not apply because a "plain error" by its definition is one that affects a defendant's ability to have a fair trial. 614 N.W.2d at 235. Because the appellant's case in *Thole* involved a guilty plea rather than a jury verdict, the district court's ruling did not affect appellant's ability to have a fair trial. *Id.* at 236. Likewise, here, there is no trial error to correct and the plain-error standard does not apply.

*quent."* Minn. Stat. § 611A.04, subd. 1 (emphasis added).

■ Specifically, I.N.A. argues that, because he was not found delinquent and adjudication was stayed, the district court did not have the authority under Minn. Stat. § 611A.04 to order restitution. The supreme court, in *State v. Gaiovnik*, recognized that even though a victim does not request restitution under chapter 611A, a district court has authority to order restitution under Minn. Stat. § 609.10 (2016), which lists the sentences available to adults convicted of a felony. 794 N.W.2d 643, 649 (Minn. 2011). Under the logic of *Gaiovnik*, the district court in a juvenile-delinquency case has the authority to order restitution as a disposition under the specific juvenile restitution statute even if the conditions of the general restitution statute in chapter 611A were not met. *See* Minn. Stat. § 645.26, subd. 1 (2016) (directing the more specific statute shall prevail over the more general when two conflict).

I.N.A. further argues that because Minn. Stat. § 260B.198, subd. 7 (allowing a district court to continue a case without adjudication), provides that a court may enter an order "in accordance with the provisions of subdivision 1" during such a stay, and that subdivision 1 provides that the disposition may be entered "[i]f the court finds that the child is delinquent," it follows that a child must be found delinquent before restitution can be ordered.

Here, a literal reading of the phrase, "the court may enter an order in accordance with the provisions of subdivision 1" under Minn. Stat. § 260B.198, subd. 7, may result in a conclusion that Minn. Stat. §. 260B.198, subd. 1, contains a precondition requiring an offender to be found delinquent before a district court can order restitution. However, such a reading of these provisions produces an absurd and unreasonable result because none of the dispositions in subdivision 1, including placing a child on supervised probation, would be allowable when a child is granted a continuance without adjudication under subdivision 7. Such a result would be contrary to the legislature's explicit statement of intent that the purpose of the juvenile-delinquency laws is to promote public safety and reduce juvenile delinquency through means that are "fair and just, that recognize the unique characteristics and needs of children, and that give children access to opportunities for personal and social growth." Minn. Stat. § 260B.001, subd. 2 (2016); *see In re Welfare of J.E.C.*, 302 Minn. 387, 401, 225 N.W.2d 245, 253-54 (1975) (determining that the purpose of the juvenile-delinquency laws is to rehabilitate). I.N.A.'s reading of the statute would close off several dispositional options under subdivision 1 of section 260B.198, such as supervised probation, that effectuate the rehabilitative purpose of the juvenile-delinquency statutes.

Finally, courts are to presume that "the legislature intends the entire statute to be effective and certain." Minn. Stat. § 645.17(2) (2016). I.N.A.'s construction of the statute would make Minn. Stat. § 260B.198, subd. 7, ineffective, because a court would lack authority to impose any of the listed conditions under subdivision 1 during a stay of adjudication. Without these rehabilitative dispositions, courts likely would not grant stays of adjudication.

In order to effectuate subdivision 7 of section 260B.198, which allows for a continuance without adjudication, we interpret the phrase "may enter an order in accordance with the provisions of subdivision 1" found in subdivision 7, to mean that a court may enter an order with the listed

dispositions available under subdivision 1.[2]

We conclude that when a district court continues a child's case without a finding of delinquency pursuant to subdivision 7 of section 260B.198, that court may order the child to pay reasonable restitution pursuant to subdivision 1(5) of that same section.

## II. Compliance with Minn. R. Juv. Delinq. P. 15.05

■ Next, I.N.A. argues that the district court's restitution order should be reversed because the court failed to make sufficient findings as required by the Minnesota Rules of Juvenile Delinquency Procedure.

Minn. R. Juv. Delinq. P. 15.05, subd. 2(a) provides that a dispositional order made by the district court

shall contain written findings of fact to support the disposition ordered and shall set forth in writing the following information:

(1) why public safety and the best interests of the child are served by the disposition ordered; [and]

(2) what alternative dispositions were recommended to the court and why such recommendations were not ordered[.]

■ Written findings are required in juvenile-delinquency cases "to show that the district court considered vital standards and to enable the parties to understand the court's decision." *In re Welfare of N.T.K.*, 619 N.W.2d 209, 211 (Minn. App. 2000). This court has repeatedly held that inadequate written findings in a juvenile-disposition order constitute reversible error. *See id.* at 211-12 (citing numerous cases reversing a district court's disposition order when there is a lack of written findings).

The district court's December 2016 order on restitution lacks explicit written findings addressing the rule 15.05, subdivision 2(a) factors. The district court found that ordering I.N.A. to pay "smaller" monthly installments of restitution "serves to rehabilitate [I.N.A.] by demonstrating the amount of time and money that goes into maintaining our cities' public park systems." While this may be an implicit finding regarding "why public safety and the best interests of the child are served by the disposition ordered," it is not an explicit written finding addressing the statutory factors. Further, the district court did not explicitly discuss in its written order what alternative dispositions were recommended to the court and why such recommendations were not ordered.

Accordingly, we remand for the district court to issue written findings addressing these factors.

## III. Ability to Pay Restitution

■ I.N.A. next argues that the district court erred in ordering restitution because the district court did not consider his ability to pay restitution. An abuse-of-discretion standard applies to this issue. *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014). A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or rendering a decision that is against logic and the facts on record. *State v. Bustos*, 861 N.W.2d 655, 666 (Minn. 2015); *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009).

In determining whether to order restitution, and the amount of restitution, the district court must consider: (1) the

**2.** The only disposition listed under subdivision 1 explicitly not allowed during a continuance without adjudication is clause (4), transfer of legal custody by commitment to the commissioner of corrections.

amount of economic loss sustained by the victim as a result of the offense; and (2) the income, resources, and obligations of the defendant. Minn. Stat. § 611A.045, subd. 1 (2016). In a juvenile-delinquency case, restitution must be "reasonable." Minn. Stat. § 260B.198, subd. 1(5). If a district court grants partial restitution, it must "specify the full amount of restitution that may be docketed as a civil judgment." Minn. Stat. § 611A.04, subd. 1(c).

 There is no strict requirement regarding how the district court should address the ability-to-pay issue. *State v. Alexander*, 855 N.W.2d 340, 344 (Minn. App. 2014). However, courts must be specific in defining the terms of restitution. *State v. Hanninen*, 533 N.W.2d 660, 662 (Minn. App. 1995). Because section 611A.045 is not explicit on how a court must consider the "income, resources, and obligations" of a defendant or juvenile respondent, the Minnesota Supreme Court determined that the legislature intended to give the courts "wide flexibility to structure restitution orders that take into account a defendant's ability to pay, including . . . a reduced monthly payment that is within the defendant's means." *State v. Maidi (Maidi II)*, 537 N.W.2d 280, 285-86 (Minn. 1995). When the goal of restitution is to rehabilitate, "the amount of restitution should be set according to the defendant's ability to pay." *State v. Maidi (Maidi I)*, 520 N.W.2d 414, 419 (Minn. App. 1994), *aff'd*, 537 N.W.2d 280 (Minn. 1995).

Here, the district court determined that ordering restitution served a rehabilitative function. The district court found in its order that I.N.A. had the ability to pay the restitution in

smaller monthly installments. While the Court understands that [I.N.A.'s] ADHD and dyslexia may make obtaining and maintaining a job more difficult, the Court does not agree that it is impossible. [I.N.A.] can, perhaps with some effort, find a part-time job that accommodates his disabilities, and he can apply the proceeds he earns to the restitution owed in this matter.

 We cannot determine based on the record and restitution order before us whether the district court abused its discretion by making a finding unsupported by the evidence or against logic and the facts on record, because the order is unclear as to how much the district court expects I.N.A. to actually pay per month, and over what period of time. By ordering "smaller monthly installments," we are unsure whether the district court meant that the total $12,529.90 would be divided up equally into smaller payments during I.N.A.'s continuance without adjudication, or whether the court meant to require I.N.A. to pay small, good-faith installments during the stay-of-adjudication period.[3] The difference between these two dispositions is substantial, particularly for a child in I.N.A.'s situation, and additional findings would aid our analysis of whether the district court fully considered I.N.A.'s income, resources, and obligations to pay such restitution. Further, if the district court meant "small" good-faith payments, and a balance would remain after the stay of adjudication, it is unclear if the court anticipated that this balance would be docketed as a civil judgment against I.N.A. pursuant to Minn. Stat. § 611A.04, subds. 1(c), 3 (2016). If a civil judgment is to be

---

**3.** I.N.A. requested in his written motion to the district court that, if the restitution order is not vacated, an installment plan be set up whereby I.N.A. would pay up to $50 per month and, at the end of probation, the outstanding amount of restitution be discharged and not entered in a civil judgment. The district court did not explicitly grant or deny this motion.

docketed, the record and restitution order does not indicate whether the district court considered the lasting impact that such a large judgment could have on I.N.A. in the future.

Because we cannot determine the actual amount that the district court ordered I.N.A. to pay in "smaller monthly installments" or whether a civil judgment will be docketed, we are incapable on review of determining whether the amount of restitution was reasonable and set according to I.N.A.'s ability to pay. We remand for the district court to: (1) specify the amount it expects I.N.A. to pay monthly and over what period of time; (2) determine whether a remaining balance will be docketed for civil judgment and, if so, what amount; and (3) assess I.N.A.'s ability to pay those specific amounts given his income, resources, and obligations.

## IV. Ordering Restitution in Full Based on Undifferentiated Damages

█ Finally, I.N.A. argues that the district court erred because it ordered him to pay the full amount of restitution without differentiating between the damage caused by I.N.A. and B.D.B.

I.N.A. relies on *State v. Nelson*, 796 N.W.2d 343 (Minn. App. 2011), where this court found that the district court erred in its restitution award by including items of loss that were not directly caused by the conduct for which the appellant was convicted. "[A] loss claimed as an item of restitution by a crime victim must have some factual relationship to the crime committed—a compensable loss must be directly caused by the conduct for which the defendant was convicted." *Nelson*, 796 N.W.2d at 347 (quotation omitted). In *Nelson*, this court concluded that an award for restitution to replace a victim's computer was unwarranted because the record did

not show that appellant broke or damaged the computer. *Id.* at 348.

In response, the state argues that (1) I.N.A. took responsibility for the property damage at his plea hearing, and (2) case-law supports ordering I.N.A. to pay restitution for the entire amount, despite the fact that a co-respondent also caused damage. Specifically, the state relies on *Miller*, 842 N.W.2d at 478, where the district court ordered Miller and a co-defendant jointly and severally liable for damages that they both caused when assaulting a victim. Miller argued that he could only be liable for the injuries and losses he directly caused, even though they were indistinguishable from the injuries and losses that the co-defendant inflicted. 842 N.W.2d at 478. This court in *Miller* agreed with the district court that parsing out blows each defendant inflicted on the victim was not required:

> Because no one can account for any of the blows particularly, Miller's argument would leave the victim to endure his own losses with neither assailant responsible for restitution. But someone put the footprint on [the victim's] head, and it wasn't [the victim]. And the district court has the duty to effectuate the statute establishing that the victim of a crime has the right to receive restitution as part of the disposition of a criminal charge.

*Id.* (emphasis omitted) (quotation omitted). This court in *Miller* concluded that the district court did not abuse its discretion when it ordered joint and several liability for the restitution, placing the burden of the uncertainty on the assailants, "leaving them to resolve among themselves how much each should pay." *Id.*

Here, the facts are different than *Miller* because the co-respondent in this case was declared incompetent to proceed, and the petition against him was dismissed, leaving

the district court with the inability to hold that co-respondent responsible for restitution. In addressing I.N.A.'s argument that he should not be held liable for the full amount of damage because the co-respondent caused some of the damage, the district court wrote that it was "inappropriate for this Court to order payment of restitution by [the] Co-Respondent when he has not been found to be responsible for any part of what took place.... [I.N.A.] is, therefore, responsible for the entire claim for restitution."

While the district court determined it would be inappropriate for it to order the co-respondent to pay restitution jointly and severally with I.N.A., it did not address the question of whether I.N.A. should only be held responsible for the portion of damage that he directly caused. These are two separate questions. To be fair, some of the confusion may stem from the fact that I.N.A.'s June 2016 motion argued that the district court should order joint and several liability with the co-respondent, while I.N.A.'s September 2016 memorandum argued more broadly that it would be unjust to make I.N.A. solely responsible for restitution. Further, while the general issue of whether I.N.A. should be liable for the full amount of restitution was raised in the district court, the parties did not discuss or argue applicable points from the aforementioned caselaw. Finally, whether the damage in this case is "indistinguishable," like the injuries in *Miller*, is a question of fact, better suited for the district court's consideration.

Accordingly, we remand so that the district court can fully consider whether I.N.A. can be held liable for the full amount of restitution for the entire damage, undifferentiated from the damage caused by the co-respondent, whose case was dismissed.

## DECISION

We affirm in part because the district court possessed the statutory authority to order I.N.A. to pay restitution pursuant to Minn. Stat. § 260B.198, subd. 1(5), when ordering a continuance without a finding of delinquency under Minn. Stat. § 260B.198, subd. 7. We reverse in part because the district court: (1) failed to make explicit written findings pursuant to Minn. R. Juv. Delinq. P. 15.05, subd. 2(a); (2) failed to specify the amount that I.N.A. must pay in smaller monthly installments so that we may determine whether the court fully considered I.N.A.'s ability to pay that specified amount; and (3) failed to address whether I.N.A. should be held responsible for all damage, undifferentiated from damage caused by others. We remand for proceedings not inconsistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**